ALDISERT, Circuit Judge,
dissenting.
To qualify for the discretionary relief of asylum, an individual must be a “refugee,” defined as any person who is “unable or unwilling to return to, and is unable or unwilling to avail ... herself of the protection of’ her country of nationality “because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42) (emphasis added). Here, we are confronted with the rare circumstance in which both parties before our Court agree that the Board of Immigration Appeals (“BIA” or “Board”) erred by concluding that Zhang was not a member of a certain social group — “persons forced to marry by someone other than their parents” — without providing any accompanying analysis about whether such a group exists nor why Zhang could not show that she belongs to it. Both parties further agree that a remand is needed to correct its errors. I join the parties in agreeing that the Board’s failure to explain Zhang’s non-membership in that group was reversible error.
Although we requested supplemental briefing on the question of whether women who are forced to marry by someone other *259 than their parents can compromise a protected social group under the INA, the Board’s failure to reach this issue and find facts necessary for its resolution deprives us of jurisdiction to now rule on it. Accordingly, I would remand for a more thorough evaluation of what group(s) Zhang’s case might implicate and whether the facts here demonstrate her membership in any of them.
I.
Before addressing the merits of this issue, it is important to briefly explain the legal background onto which this case is cast. Integral to any asylum or withholding of removal claim under § 208 is an alien’s claim that her persecution was “on account of’ one of the grounds specified in that statute. Zhang contends that she is entitled to relief because of her persecution on account of her membership in a “particular social group.” This “particular social group” concept has proven ponderous in its application. In Fatin v. INS, 12 F.3d 1233 (3d Cir.1993), we wrote: “Both courts and commentators have struggled to define particular social group.’ Read in its broadest literal sense, the phrase is almost completely open-ended. Virtually any set including more than one person could be described as a particular social group.’ Thus, the statutory language standing alone is not very instructive.” Id. at 1238 (footnotes omitted).
Against that nebulous backdrop, the Attorney General has provided some guidance. In the seminal case on this topic, In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), overruled on other grounds by In re Mogharrabi, 19 I. & N. Dec. 201 (BIA 1985), the Board interpreted “particular social group” to mean a collection of individuals united by (1) a shared immutable characteristic, which may be (a) innate (such as gender or race), or (b) acquired through past experience (such as former military service or land ownership); or (2) a shared mutable characteristic of the sort that a person “should not be required to change because it is fundamental to their individual identities or consciences.” Id. at 233-234. Importantly, “the particular kind of group characteristic that will qualify under this construction remains to be determined on a case-by-case basis.” Id. at 233.
In addition to the Acosta requirements — which we have adopted as binding in this Circuit, see Fatin, 12 F.3d at 1239-1240 — we have recognized two other hurdles a petitioner must clear when defining a “particular social group.” First, because the complained-of persecution must occur “on account of’ membership in a social group, and not vice-versa, a petitioner cannot circularly define a social group in terms of the persecution suffered. See Lukwago v. Ashcroft, 329 F.3d 157, 172 (3d Cir.2003) (holding that “children from Northern Uganda who are abducted and enslaved by the LRA and oppose their involuntary servitude to the LRA” could not constitute a “particular social group” for a past persecution claim because the complained-of persecution created the group). Instead, “[a] particular social group’ must exist independently of the persecution,” and “must have existed before the persecution began.” Id. For future persecution claims, though, past persecution may define a social group if the feared future persecution is different from the past persecution, see id. at 172-173 (holding that “former child soldiers” could constitute a “particular social group” for purposes of claiming future persecution because the past persecution — kidnapping and forced military service — differed from the feared persecution — execution for desertion).
Second, a proposed social group definition must not be so “vague and all encompassing” that it obfuscates a meaningful *260 analysis of the impetus for the complained-of persecution. Escobar v. Gonzales, 417 F.3d 363, 368 (3d Cir.2005) (rejecting a proposed social group of street children alleged to share the common characteristics of “poverty, homelessness and youth” for being so vague as to frustrate an evaluation of whether persecution was “on account” of those characteristics).
II.
Turning to the case at hand, the Immigration Judge (“IJ”) and BIA both found that Zhang did not belong to a protected social group. After Zhang and her counsel struggled to define the protected social group to which Zhang belonged, they ultimately proposed two groups — “single women in China,” or “single women in China whose parents oppose family planning laws.” The IJ found these groups overly broad.
On appeal, the Board affirmed the IJ’s conclusion. Rather than discuss the social groups considered by the IJ, the Board cursorily dismissed Zhang’s claim with reference to a third, as-yet-undiscussed group: “people who are forced into marriage by someone other than their parents.” App. 00003. The Board’s analysis on this topic, in full, was as follows:
We further agree with the Immigration Judge that the respondent has not met her burden of proving membership in a particular social group (people who are forced into marriage by someone other than their parents) that is subject to persecution in China. [In re ] H-, 21 I. & N. Dec. 337 (BIA 1996) (holding claims based upon membership in a particular social group must show that persecution will be directed toward a member of a group of persons that share a common, immutable characteristic that they cannot change, or should not be required to change because it is fundamental to their individual identities or consciences); [In re ] C-A-, 23 I. & N. Dec. 951 (BIA 2006) (holding a particular social group may also be distinguished by its “social visibility”); see also [In re ] A-M-E & J-G-U-, 24 I. & N. Dec. 69, 74-76 (BIA 2007).
App. 00003.
The parties agree that the Board’s bare-bones conclusion was insufficient. See, e.g., Supp. Ltr. Brief for United States 7 (“In discussing whether the putative group of people who are forced into marriage by someone other than parents’ is a particular social group’ within the meaning of the INA, the Board’s decision in Zhang’s case is ambiguous or not entirely clear.”). Indeed, even a brief evaluation of the Board’s opinion reveals it to be sorely wanting: the Board did not explain whether such a group exists, much less why Zhang is not a member of it.[1]
Its case citations provide no additional guidance. Of the three cases the Board cited, the precepts espoused in the latter two, In re C-A- and In re A-M-E & J-GU-, have since been specifically discredited *261 by our Court. See Valdiviezo-Galdamez v. Att’y Gen., 668 F.3d 582, 603-609 (3d Cir.2011). In the first case, In re H-, the Board concluded that members of a specific sub-clan in Somalia constituted a “particular social group” under Acosta’s immutable-innate characteristic rubric.
Viewing the Board’s opinion here charitably, one might conjecture that the Board included this citation to In re H- to explain that “people who are forced into marriage by someone other than parents” are not united by an immutable-innate characteristic, in contrast to the hereditary-clan-member petitioner in In re H-. Even if one interprets the Board’s citation to In re Hi-to imply the conclusion that Zhang’s putative group lacks an immutable-innate characteristic, though, the Board’s opinion still remains unsalvageable. Under Acosta, if a proposed group is not united by (l.a) a common immutable-innate characteristic, the Board must still evaluate whether the group might be united by (l.b) a non-innate immutable characteristic formed by a past experience, or by (2) a mutable but fundamental trait. See Acosta, 19 I. & N. Dec. at 233. As the government freely admits here, “[tjhere is no indication in the language of the Board’s decision that it decided either of these alternative means of satisfying the Acosta standard for a social group.” Supp. Ltr. Brief for United States 8.
I cannot discern from the Board’s opinion whether it evaluated Zhang’s putative social group — “people who are forced into marriage by someone other than parents” — under the other prongs of the Acosta standard. Resolving that question would require finding additional facts, applying legal standards to those facts, and concluding in the first instance a number of legal questions of first impression, including: (1) whether the experience of forced marriage is “immutable”; (2) whether the ability to choose one’s spouse is so fundamental to human conscience and dignity that one should not be deprived of that experience by a forced marriage; and (3) whether Zhang may even maintain a past persecution claim on this ground as someone who has never actually been “forced into marriage” at — all indeed, she fled before she wed. All parties thus agree that a remand is in order. See Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006) (per curiam) (holding that a remand to an administrative agency is needed where sufficient facts have not been found).
III.
For the foregoing reasons, I respectfully disagree with the Majority and would remand to the BIA for a more thorough evaluation of what group(s) Zhang’s case might implicate and whether the facts here demonstrate her membership in any of them. Although I reserve judgment on whether Zhang actually was persecuted or has a well-founded fear of future persecution, I would reverse the BIA’s cursory conclusion to the contrary and remand for a more thorough explanation, especially in light of the Board’s re-determination of Zhang’s social group membership, which may impact whether threats of imprisonment constitute persecution.

. Indeed, Amicus contends that the formulations considered by the Board doomed Zhang from the start, because the group of "women who have been forced into marriage” is defined precisely in terms of the persecution. Amicus suggests that a more appropriate formulation for this case would be "women in China who are opposed to the practice of forced marriage.” Amicus contends that this group satisfies Acosta's mutable-fundamental test, because a woman's opposition to marrying a particular person is a belief so fundamental to her identity that she ought not be required to change it. By defining itself independently from the persecution, moreover, this construction avoids the self-referential problem explained above. Most importantly, it applies neatly to Zhang, whose complained-of persecution (threats of selective enforcement of the law resulting in imprisonment) is "on account of” her membership in the group (her opposition to marrying the chief’s son).